FILED
SUPERIOR COURT
OF GUAM

2022 APR 12 PM 5: 55

CLERK OF COURT

BY:_____

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| PEOPLE OF GUAM, ) | CRIMINAL CASE NO. CF0096-21 |
| ) | GPD Case No.: 21-04108/21-04369 |
| ) | |
| vs. ) | |
| ) | |
| ) | DECISION AND ORDER RE. |
| RANDY JUNIOR CHACO NAUTA ) | DEFENDANTS' MOTION TO |
| (aka Randy Junior Nauta) ) | DISMISS THE INDICTMENT |
| DOB: 11/21/1986 ) | |
| ) | |
| ) | |
| ANTHONY VINCENT IGNACIO ) | |
| (aka Anthony Vincent Chargualaf Ignacio ) | |
| aka Tony; aka Ton) ) | |
| DOB: 11/02/1984 ) | |
| ) | |
| Defendants. ) | |
| ) | |

## I.   INTRODUCTION

This matter is before the Honorable Maria T. Cenzon on Defendants' Joint Motion to Dismiss the Indictment. Alternate Public Defender Brycen Breazeale appeared on behalf of Defendant Randy Junior Chaco Nauta ("Nauta" or "Defendant Nauta"). Attorney F. Randall Cunliffe was present on behalf of Defendant Anthony Vincent Ignacio ("Ignacio" or "Defendant Ignacio"). Assistant Attorney General Sean Brown represented the People of Guam (the "People"). Following the hearing on the Motion, the Court took the matter under advisement pursuant to Supreme Court of Guam Administrative Rule 06-001 and CVR 7.1(e)(6)(A) of the Local Rules of the Superior Court of Guam. Having duly considered the parties' briefs, oral

arguments, and the applicable law, the Court now issues the following Decision and Order DENYING the Defendants' Motion.

## II. BACKGROUND AND FACTS

The Court incorporates the background and facts as set forth in its Decision and Order issued in this case on September 20, 2021 (the "previous Decision and Order"). See People v. Nauta, CF0096-21, at 12-13, Decision and Order Re. Defendants' Joint Motion to Dismiss Indictment (Sept. 20, 2021). For the purpose of ease of reference, the Court briefly summarizes the allegations contained in the Magistrate's Complaint and Declaration and the Indictment here.

Nauta and Ignacio were indicted on February 25, 2021, of the following charges:

Against Nauta:

1. Attempted Murder (As a 1st Degree Felony) with Special Allegation: Possession or Use of a Deadly Weapon in the Commission of a Felony;
2. Aggravated Assault (As a 2nd Degree Felony) with Special Allegation: Possession or Use of a Deadly Weapon in the Commission of a Felony;
3. Aggravated Assault (As a 3rd Degree Felony) with Special Allegation: Possession or Use of a Deadly Weapon in the Commission of a Felony; and
4. Possession of a Schedule II Controlled Substance (As a 3rd Degree Felony).

Against Ignacio:

1. Attempted Murder by Complicity (As a let Degree Felony);
2. Aggravated Assault by Complicity (As a 2nd Degree Felony); and
3. Aggravated Assault by Complicity (As a 3rd Degree Felony).

An altercation occurred on or about February 16, 2021, that is alleged to have culminated in the named victim, Jesse Quidachay ("Quidachay"), being shot by Nauta. Magistrate's Complaint (Feb. 16, 2021). Prior to the altercation, text messages between relatives Ignacio and Quidachay were purportedly exchanged threatening one another and inciting each other to fight. Ignacio, with Nauta as his passenger, drove and parked near Quidachay's

location. A witness reported seeing Quidachay approach and start hitting the vehicle with a black stick while calling Ignacio to fight. Witnesses then observed the car reverse. Ignacio allegedly yelled out "blast him, Par" whereupon Nauta walked around the back of the vehicle and shot Quidachay with a shotgun. The two Defendants then allegedly fled the scene.

This altercation was caught by surveillance cameras which largely mimic witness descriptions. There is no dispute that the grand jury was not shown the footage nor that they were not instructed on the Caste Doctrine or its immunity provisions. For these two omissions, Ignacio filed a Motion to Dismiss the Indictment on October 25, 2021, to which Nauta filed a Joinder on January 24, 2022. The People filed an Opposition to the Motion on October 27, 2021. The Court scheduled and heard oral arguments on the briefs on January 12, 2022.

## III.   LEGAL DISCUSSION AND ANALYSIS

The Defendants move this Court to dismiss the Indictment contending, "[t]he Grand Jury could not have made a valid determination whether or not there was probable cause to bring charges against Defendants. . . ." *See* Defendant's Br. at 2 (Oct. 25, 2021). Defendants' arguments in support of this contention are twofold: (1) that the People failed to present the grand jury with evidence in their possession as required, and (2) that the People failed to instruct the Grand Jury on the Castle Doctrine, thereby removing any consideration of immunity from prosecution. Before reaching the merits of Defendants' arguments, however, it is imperative that the Court draw attention to the Defendants' failure to provide the Court with any legal authority in support of these purported mandates, in violation of the rules governing motions practice in criminal cases.

//

//

## A. Defendants' failure to comply with the applicable Rules of Criminal Procedure frustrates the purpose of the rules.

The purpose of the Local Rules of the Superior Court of Guam is stated succinctly: "These Rules shall be construed so as to be consistent with applicable statutes to promote the just, efficient and economical determination of every action and proceeding." GR 1.1 (c). Toward this end, CR 1.1(b)(1) of the Local Rules of Criminal Procedure clearly provides a procedure by which parties in a criminal case might seek an order of the court, such as an order dismissing an indictment, and requires as follows:

CR 1.1 Pleadings and Pretrial Motions.

(a) Applicability. The provisions of this Rule shall apply to all criminal cases, unless otherwise ordered by the court or provided by statute, or the Local Rules of the Superior Court of Guam.

(b) Motions. (1) Required Pleadings. An application to the court for an order shall be by motion. A motion other than one made during a trial or hearing shall be in writing unless the court permits it to be made orally. It shall state the grounds upon which it is made and shall set forth the relief or order sought. **It shall be supported by a memorandum containing citations of authority** and may also be supported by affidavit. The motion shall also include copies of all documentary evidence that the moving party intends to submit in support of the motion. Additionally, all motions and each response or opposition thereto shall contain a statement whether an evidentiary hearing is requested and an estimate of the time required for the presentation of the evidence and/or arguments. The reply brief shall contain a re-estimate of the time or a statement that the original estimate is unchanged.

(Emphasis added). See also 8 GCA § 1.27.

The Court has observed an unfortunate laxness by which counsels have practiced before the trial courts of the Superior Court of Guam, specifically with regard to motions practice which are governed by the Local Rules of Criminal Procedure, the criminal procedure statutes set forth in Title 8, Guam Code Annotated, and any applicable gap-fillers contained in the Rules of Civil Procedure and the Local Rules. Despite Defendants' failure to cite any legal authority

(other than the Castle Doctrine Act itself and irrelevant civil cases), the Guam Supreme Court has held the trial courts to their "duty to analyze the merits of the motion before rendering its decision." *Mano v. Mano*, 2005 Guam 2 ¶ 14 (quoting *In re Petition of Quitugua v. Flores*, 2004 Guam 19 ¶ 28). Consequently, despite counsels' disregard of the substance of Local Rule of Criminal Procedure CR1.1 requiring motions to contain citations to legal authority upon which their arguments are based, the courts must provide a sound legal basis supporting its determinations.[1]

For such failure to comply with the applicable rules, counsels are hereby admonished to comply with the mandates of the rules of procedure inasmuch as the trial courts are held to such compliance. The Court now addresses the substance of Defendants' motion.

**B.** **The trial court, not the grand jury, is the proper arbiter of whether a Defendant is immune from prosecution under the Castle Doctrine Act.**

Without citation to any law in support of its current argument, other than to Guam's Castle Doctrine Act itself, Defendants attempt an end run at avoiding prosecution by invalidating the long established grand jury determination of probable cause by injecting a process that is not required nor contemplated by Guam's Castle Doctrine Act. Defendants argue that the prosecution should have been required to inform the grand jury about the Castle Doctrine Act in order to validate its probable cause determination to issue an indictment. Additionally, they argue, the prosecution should have presented the surveillance videos to the grand jury. The prosecution's failures, therefore, nullify or invalidate the grand jury's

---

[1] After the hearing, defense counsel submitted case citations for consideration. *Submission of Cases for Consideration* (Jan. 12, 2022)(citing *Amsden v. Godofredo* [sic](*Yamon*), 1999 Guam 14 and *Ponderosa Homes, Inc. v, City of San Ramon*, 29 Cal. Rptr. 2nd 26, 29 (1994)). However, neither case cited addresses a criminal matter, let alone a determination of immunity pursuant to the Castle Doctrine or other statute providing immunity from criminal prosecution. These cases are, therefore, wholly irrelevant to this Court's determination.

determination of probable cause. The Court rejects Defendants' contentions as unsupported by law or the record.

As discussed in great detail in the Court's previous Decision and Order, 9 GCA § 7.112 provides for certain limited absolute immunity for use of "defensive force that is intended or likely to cause death or serious bodily injury" as follows:

§ 7.112. Home Protection, Use of Deadly Force, Presumption of Fear of Death or Harm.

(a) A person is presumed to have held a reasonable fear of imminent peril of death or serious bodily injury to himself or herself or another when using defensive force that is intended or likely to cause death or serious bodily injury to another if:

(1) the person against whom the defensive force was used was in the process of unlawfully and forcefully entering, or had unlawfully or forcefully entered, a business, residence, or occupied vehicle, or if that person had removed or was attempting to remove another against that person's will from the business, residence, or occupied vehicle; and

(2) the person who uses defensive force knew or had reason to believe that an unlawful and forcible entry or unlawful and forcible act was occurring or had occurred.

(b) The presumption set forth in Subsection (a) does not apply if:

(1) the person against whom the defensive force is used has the right to be in or is a lawful resident of the business, residence, or vehicle, such as an owner, lessee, or titleholder, and there is not an injunction for protection from domestic violence or a written pretrial supervision order of no contact against that person; or

(2) the person who uses defensive force is engaged in a criminal activity or is using the business, residence, or occupied vehicle to further a criminal activity; or

(3) the person against whom defensive force is used is a uniformed law enforcement officer who enters or attempts to enter a habitable property, residence, or vehicle in the performance of his or her official duties, and the officer identified himself or herself in accordance with applicable law,

or the person using force knew or reasonably should have known that the person entering or attempting to enter was a law enforcement officer.

Immunity from criminal prosecution for the use of such defensive force defined in Section 7.112, above, is found in 9 GC § 7.113:

§ 7.113. Immunity from Criminal Prosecution and Civil Action.

(a) As used in this Section, the term *criminal prosecution* includes arresting, detaining in custody, and charging or prosecuting the defendant.

(b) A person who uses force as permitted in § 7.112 is justified in using such force and is immune from criminal prosecution and civil action for the use of such force, except when:

(1) the person against whom force was used is a law enforcement officer, as defined by public law, who was acting in the performance of his or her duties, and the officer identified himself or herself in accordance with applicable law; or

(2) the person using force knew or reasonably should have known that the person was a law enforcement officer; or

(3) the use of force is found to be unlawful or was found to have been exercised with any illegal activity.

(c) A law enforcement agency shall use standard procedures for investigating the use of force as described in Subsection (b), but the agency may not arrest the person for using force unless it determines that there is probable cause that the force that was used was unlawful.

(d) The court shall award reasonable attorney's fees, court costs, compensation for loss of income, and all expenses incurred by the defendant in defense of any civil action brought by a plaintiff if the court finds that the defendant is immune from prosecution as provided in Subsection (b).

As this Court found previously, the Act "does not specify the procedure by which the court may implement such immunity." Decision and Order at 5-6. The immunity language – as well as the legislative omission of the procedure for determining immunity – is common in

similar "Castle Doctrine" or "Stand Your Ground" laws in other jurisdictions. See e.g., Ala. Code § 13A-3-23(d)(1) (Westlaw through Act 2020-38) ("A person who uses force, including deadly physical force, as justified and permitted in this section is immune from criminal prosecution and civil action for the use of such force, unless the force was determined to be unlawful."); Fla. Stat. Ann. § 776.032(1) (West, Westlaw through 2020 2d Reg. Sess. of 26th Leg.) ("A person who uses or threatens to use force as permitted ... is justified in such conduct and is immune from criminal prosecution and civil action for the use or threatened use of such force by the person, personal representative, or heirs of the person against whom the force was used or threatened .... [The] term 'criminal prosecution' includes arresting, detaining in custody, and charging or prosecuting the defendant."); Ga. Code Ann. § 16-3-24.2 (West, Westlaw through Laws 2020, Act 322) ("A person who uses threats or force in accordance with [the law] shall be immune from criminal prosecution therefor unless in the use of deadly force, such person utilizes a weapon the carrying or possession of which is unlawful by such person ...."); Kan. Stat. Ann. § 21-5231 (West, Westlaw through 2020 Reg. Sess.) ("A person who uses force which ... is justified ... is immune from criminal prosecution and civil action for the use of such force .... '[C]riminal prosecution' includes arrest, detention in custody and charging or prosecution of the defendant .... A prosecutor may commence a criminal prosecution upon a determination of probable cause."); Ky. Rev. Stat. Ann. § 503.085 (West, Westlaw through 2019 Reg. Sess.) ("A person who uses force as permitted ... is justified in using such force and is immune from criminal prosecution and civil action for the use of such force .... [T]he term 'criminal prosecution' includes arresting, detaining in custody, and charging or prosecuting the defendant."); Okla. Stat. Ann. tit. 21, § 1289.25(F) (West, Westlaw through ch. 4 of 2d Reg. Sess. of 57th Leg.) ("A person who uses defensive force, as permitted ..., is justified in using

such defensive force and is immune from criminal prosecution and civil action for the use of such defensive force.... [T]he term 'criminal prosecution' includes charging or prosecuting the defendant."); S.C. Code Ann. § 16-11-450(A) (Westlaw through 2020 Act No. 115) ("A person who uses deadly force as permitted ... is justified in using deadly force and is immune from criminal prosecution and civil action for the use of deadly force ....").[2]

Regardless of whether the Stand Your Ground or Castle Doctrine provisions specifically contain procedures for determining immunity, *none* of these jurisdictions with similar laws have placed the duty of such determination upon a grand jury. In *Rogers v. Commonwealth of Kentucky*, 285 S.W.3d 740 (Ky. 2009), cited by this Court and discussed at length in its previous Decision and Order, the Kentucky Supreme Court found that the duty of determining probable cause falls upon law enforcement, the prosecutor and the courts. *Rogers* at 754. More importantly, the *Rogers* court indicated that the grand jury does not determine the applicability of the immunity provisions of Kentucky's version of the Castle Doctrine Act, but rather invites a Defendant to raise the immunity bar by motion to the court "*if* [he] is indicted." *Rogers* at 755 (emphasis added)(court also refusing to add a procedural evidentiary hearing where none is required by statute, declaring, "The legislature did not delineate an evidentiary hearing and the only standard of proof against which a defendant's conduct must be measured is the

---

[2] Some states, such as Florida, require a defendant to establish a prima facie claim of self-defense immunity from criminal prosecution under their Stand Your Ground laws. Once established, the burden shifts to the prosecution to establish, by clear and convincing evidence, that immunity does not apply. Fla. Stat. Ann. § 776.032 (West). Kentucky, like Guam, does not have a similar provision and its immunity provisions do not provide any statutory procedure for determining the applicability of the immunity statute or the burden of proof. Ky. Rev. Stat. Ann. § 503.085 (West).

aforementioned probable cause. We decline to create a hearing right that the statute does not recognize . . ..").[3]

In their second motion to dismiss, the Defendants brazenly declare: "While it[4] might require the Government to present matters to the Grand Jury in cases where the Castle Doctrine has potential applicability, that is not IGNACIO's problem. ... Without presenting the Castle Doctrine instruction and the evidence to the Grand Jury, they could not possibly determine whether or not they should 'charge' IGNACIO with this Indictment." Reply at 2. Defendants continue, "The fact that the issue of the Castle Doctrine and self defense can be presented at trial does not relieve the Government of its obligation to provide the information to the Grand Jury so they could make a proper probable cause determination before they "charge" a crime by issuing an indictment." Id.

While Defendants might advance some interesting arguments, they do not provide legal support for their contentions. Moreover, the Court has been unable to locate case authority which addresses such a notion requiring the prosecution to present this Castle Doctrine/Stand Your Ground/self-defense information to a grand jury in order for the grand jury to adjudicate immunity as it also considers whether probable cause exists to bring a defendant to trial. It is notable that the Defendants concede that they seek a ruling of this Court that the prosecution must instruct a grand jury about the Castle Doctrine Act "in [all] cases where the Castle Doctrine *has potential applicability*." Reply at 2. The Act does not contain any such mandate nor will the Court create such a mandate where none exists, either expressly or impliedly.

---

[3] The question of who bears the burden of proving that immunity applies (or doesn't apply) is as of yet unresolved throughout several jurisdictions. Some, such as Colorado, Florida and Alabama, for example, place the burden upon a Defendant to establish, by a preponderance of evidence, that the Defendant was justified in using deadly force.

[4] The Court interprets this statement to refer to a requirement that the prosecution provide a grand jury with "Castle Doctrine" evidence or instructions on the Castle Doctrine.

Importantly, safeguards guaranteeing that a determination of an actor's immunity from prosecution is made are in place in all stages of the Castle Doctrine Act. First, law enforcement (police officers) must make a determination of probable cause for the arrest. Second, the prosecution makes a determination of probable cause to charge a defendant and to bring the matter before a grand jury to seek an indictment. As a final gatekeeper of the Castle Doctrine Act immunity, the courts are charged with determining whether immunity applies to relieve a Defendant from prosecution under the statute. It would appear that at every stage of this prosecution, a probable cause determination has been made. As this Court has already ruled, based upon the record before it, including the surveillance video not presented to the grand jury, "the People have satisfied its burden of proof of probable cause in establishing that the Defendants' acts were not justified for the purpose of immunity under the Castle Doctrine Act." Decision and Order at 13, 14. Respecting the cardinal rule of statutory construction that, absent clear legislative intent to the contrary, the plain meaning of the statute prevails, had the Guam Legislature intended the grand jury to also be an adjudicatory body rather than a charging body, it would have expressly stated in the Castle Doctrine Act or in the grand jury provisions in Title 8, Guam Code Annotated, Chapter 50. See, *People v. John*, 2016 Guam 41, ¶ 55 (quoting *People v. Camacho*, 2015 Guam 37 ¶ 31). See also, *Cummiskey v. Superior Ct.*, 3 Cal. 4th 1018, 1026, 839 P.2d 1059, 1064 (1992), *as modified on denial of reh'g* (Feb. 11, 1993)("it is the grand jury's function to determine whether probable cause exists to accuse a defendant of a particular crime. In other words, the grand jury serves as part of the charging process of criminal procedure, not the adjudicative process that is the province of the courts or trial jury.").

This Court has previously rejected, for reasons also articulated here, a similar attempt by a defendant to dismiss an indictment for failure of the prosecutor to inform the grand jury about

self-defense and to present purportedly exculpatory evidence that the victim had a knife in his possession during the grand jury proceedings. See People v. Flores, CF0216-18, Decision and Order Denying Defendant's Motion to Dismiss The Indictment (Jun 17, 2019). Thus, now acceding to Defendants' position would set an undesirable precedent requiring the prosecution to inform the grand jury of lesser included offense or evidence establishing an affirmative defense or the Castle Doctrine – none of which are required under the current controlling law. People v. Grajo, 1987 WL 109393 *2 (D. Guam App. Div. 1987)(ruling further that "the prosecutor is not required to explain the significance of the evidence.").[5]

The Defendants' contention that the Castle Doctrine must have been instructed to the Grand Jury also runs afoul of well-established Supreme Court precedent. See United States v. Sisson, 399 U.S. 267, 288 (1970) ("It has never been thought that an indictment, in order to be sufficient, need anticipate affirmative defenses...."; McKelvey v. United States, 260 U.S. 353, 357 (1922) ("[A]n indictment . . . . founded on a general provision defining the elements of an offense . . . . need not negative the matter of an exception made by a provision or other distinct cause ..... it is incumbent on one who relies on such an exception to set it up and establish it."); Evans v. United States, 153 U.S. 584, 590 (1894)("neither in criminal nor in civil pleading is [the Government] required to anticipate or negative a defense.").

In opposing Defendants' motion, the People urge the Court to consider United States v. Titterington, 374 F.3d 453 (6th Cir. 2004). See Oral Argument at 10:02-10:05 (Jan. 12, 2022). In Titterington, the Defendants moved to dismiss their allegedly deficient indictment on the grounds that it failed to allege that the offenses occurred during the applicable statute of

---

[5] Amerault v. Intelcom Support Servs., Inc., 2004 Guam 23 ¶ 11 (Sup. Ct. Guam 2004) (stating that the "decisions of the District Court of Guam's Appellate Division are [generally] binding on the Superior Court of Guam.").

limitations period. The district court interpreted the statute of limitations as a "jurisdictional bar" and thus its omission meant the indictment lacked the essential element of each offense charged, thus warranting the dismissal of the indictment. The Sixth Circuit reversed on the grounds that the statute of limitations is an affirmative defense that the government did not need to plead in an indictment. While Titterington is a Sixth Circuit opinion that largely revolves around a separate issue (whether the statute of limitations was a "jurisdictional bar" or an affirmative defense), this Court nonetheless agrees with the People that it is persuasive in that it joins the chorus of precedent in reaffirming that affirmative defenses need not be presented to the grand jury. Id. at 454 ("[W]e conclude that the statute of limitations is an affirmative defense that the Government need not specifically plead in a criminal indictment.").

Contrariwise, the Court finds the cases proffered by the Defendants wholly irrelevant. As the Court laments herein and as the People pointed out, the Defendants "fail[ed] to cite any authority" in their motions in support of their argument. *Supra;* People's Br. at 4. After submitting their motions and attending oral argument, the Defendants did plainly submit two (2) cases for consideration, however unaccompanied by any analysis. See Submission of Cases for Consideration (Jan. 12, 2022). The two submitted cases dealt with civil lawsuits and neither discusses why a court should dismiss an indictment based on a prosecutor withholding evidence or failure to instruct the grand jury on the Castle Doctrine/Stand Your Ground/self-defense/immunity provision of law. It is not the duty of this Court to conduct an analysis on the Defendants' behalf nor to hypothesize how these cases can advance their arguments, thus, the Court finds that these cases compel no different conclusion and indeed do not support Defendants' arguments.

In this case, the Court adopts the holding in Grajo, and in the numerous other cases cited herein, and finds the prosecutor has no duty to explain the significance of the evidence nor to have presented the evidence in the first instance. The Defendants fail to cite to any authority creating a prosecutorial requirement to instruct the grand jury on the Castle Doctrine and, in any event, vast precedent exists averse to such a position. As such, the Court finds the People did not have a duty to instruct the Grand Jury on the Castle Doctrine. Instead, this Court opines that whether Defendants actions justify self-defense or used greater force than necessary in so doing is a matter to be resolved by a petit jury. See People of the Territory of Guam v. Cruz, 913 F.2d 748, 750 (9th Cir. 1990).

### D. The Court has previously determined that the surveillance videos do not support a finding of immunity under the Castle Doctrine Act.

In its previous Decision and Order, this Court went into an extensive analysis of the surveillance videos in question when determining whether the prosecution had satisfied its burden of probable cause. *See People v. Nauta*, CF0096-21, at 12-13, Decision and Order Re. Defendants' Joint Motion to Dismiss Indictment (Sept. 20, 2021). Because it would be unnecessary and redundant to repeat the entire analysis here, the Court will incorporate its decision therein as the law of the case and sustain its prior findings that the videos tend to depict the Defendants engaging in an unlawful purpose and belie the Defendants' claim that Quidachay was holding a knife and that he attempted to enter the Defendants' vehicle. *Id.*

Despite not viewing the videos, the grand jury found the "facts and circumstances **within their knowledge.** . . . sufficient to warrant a prudent man in believing that the [Defendants] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964) (emphasis added); *See also People v. Taman*, 2013 Guam 22 ¶23. While we cannot

know with any certainty what the grand jury might have ultimately found when presented with the surveillance videos, the Court has already determined the videos to be unconvincing with regard to immunity under the Act, ruling previously that "the Court finds that the People have satisfied its burden of proof of probable cause in establishing that the Defendants' acts were not justified for the purpose of immunity under the Castle Doctrine Act." Decision and Order at 14. Plainly stated, the Defendants have "failed to identify anything other than speculation that, had the grand jury considered the recordings, they would have affected its decision to indict." *People v. Houston*, 54 Cal. 4th 1186, 1206 (2012).

## IV. CONCLUSION

For the reasons set forth herein, Defendants' Joint Motion to Dismiss the Indictment is DENIED.

SO ORDERED this **APR 1 2 2022** .

HONORABLE MARIA T. CENZON
Judge, Superior Court of Guam